We will move to our third case this morning, and that is Lewis v. Zatecky. All right, Ms. Wilbanks, you may proceed. Hello, and may it please the Court. My name is Kaitlyn Wilbanks, and I am a third-year student at the Indiana University Maurer School of Law. I am appearing for Roderick Lewis. Mr. Lewis was abandoned by his attorney, Jeffrey Raff, at a sentencing hearing, and was consequently sentenced to the maximum of 130 years. His co-conspirators, who fired the shots, have not to this day been charged. We argue that Mr. Lewis is entitled to a writ of habeas corpus conditioned on a new sentencing hearing with the effect of assistance of counsel. We have three primary points. First is that Mr. Raff did nothing at Mr. Lewis's sentencing hearing apart from introduce his client. Post-conviction testimony reveals that Mr. Raff also did nothing behind the scenes to prepare Mr. Lewis. So can I just ask you just to clarify on that second point? I understand you to be responding to the government's argument that Mr. Raff's strategy was to throw his client on the mercy of the court, that you think Mr. Raff should have sat down and said, look, your best bet is to make an effective allocution. You should express remorse. You should do this. But that kind of conversation never happened. That is correct. So the superintendent brings up Florida v. Nixon, which stands for that exact idea, which is that if if there is going to be some sort of concession or whatever, it may not be an effective assistance of counsel so long as there was a reasonable strategy, as long as that strategy was communicated to the client, as long as the client acquiesced to it or accepted it explicitly. Ms. Wilbanks, why is this a chronic case? Why isn't this a Strickland case? So our next point actually leads to that, which is that Bell clearly establishes the rule that when a lawyer does nothing and when there is a complete failure to subject the prosecution's case to meaningful adversarial testing, that chronic applies. And that is the case in this instance. Do you consider this to be a chronic Exception 1 case or a chronic Exception 2 case? This would be an Exception 2 case because it's a critical stage of sentencing. And that you're saying it's Section 2 because Mr. Raff was physically present in the room. I just want to know what you think it takes to get to Part 1. Yes, Mr. Raff was physically present in the room and he introduced his client, but he was effectively absent because he did not do anything to prepare Mr. Lewis or to put Mr. Lewis's own statement in context. Right, because preparation, it's a little different because I understood you to be almost conceding. This might not have been an apt situation for adversarial testing of the government's sentencing position, but somehow more broadly that he needed to prepare his client, even if it was what I'll call a remorse strategy. He needed to discuss this with his client. It's a little beyond just adversarial testing, isn't it? Well, in order to meaningfully subject the prosecution's case to testing, there needed to be some sort of coherent plan and strategy involved. Simply attending, introducing his client, and doing nothing else is a failure to subject the prosecution's case to any sort of testing. Had there been some indication that he had prepared Mr. Lewis or otherwise formulated some sort of strategy, that would indicate that there was some testing going on, even if the speech at the actual proceeding was rather limited. Ms. Buolbanks, part of the challenge here is that the chronic cases are not always clear, whether Exception 1 is dealing with a portion of the case or the trial, whether Exception 2 deals with the entirety of that lawyer's representation. If we see this rather than an Exception 2 case as an Exception 1 case, there have been very few instances in which this court or other courts have found there to be a presumption of prejudice based on Exception 1. If we see this as an Exception 1 case, does your client not prevail? Or can your client still prevail? Yes, Mr. Raff was effectively absent. His performance was on par with total absence. He had abandoned his client, and so he did nothing. There was no actual representation occurring at the sentencing hearing. So I take it, just to follow up on what Judge Brennan is saying, that that's your answer vis-à-vis Exception 1, not Exception 2. Correct. Okay. To our third point. Oh, to a second point, actually. So Bell clearly establishes the rule that when there's complete failure, chronic applies. Because the Indiana Court of Appeals applied a different rule, that meant that their resulting decision was contrary to clearly established federal law. And third, this court has already recognized that chronic and Bell established the rule, and recognized that when it decided Miller, a case that the district court said had no meaningful distinction from this case. Now, it is true that this court may not look to its earlier cases to determine exactly what a constitutional rule is. However, the Supreme Court has been clear that this court may look to its prior precedent to ascertain whether it has already held that a particular rule was clearly established by certain cases. Do you want to speak, Ms. Wilbanks, to how Schmidt v. Foster, the court's en banc opinion from 18, affects that, or affects this case? I'm sorry, I'm not familiar with that. If you prefer not to, that's fine as well. Yes. This is clearly a critical stage. Sentencing has been clearly established to be a critical stage of the proceedings. Correct. The difference, I'll just help you, the difference with Schmidt v. Foster and the thing that split the en banc court, but it was held that there was not a complete abandonment of counsel at the critical stage because counsel was available and there was some ability to confer and so forth. So there was activity with counsel in the Schmidt case that we don't see here. Thank you. So this, as we mentioned, this decision was contrary to the established rule. The contrary to clause of section 2254 is triggered when a state rule applies a rule different, when a state court applies a rule different from the governing law set forth in Supreme Court cases. The specific question here was whether to analyze prejudice flowing from a lawyer's non-performance at a sentencing hearing under Strickland or whether to presume that prejudice under Cronic. This was squarely addressed by Bell when the court explained how to determine when to apply Strickland and when to apply Cronic. The judgment in that case was that because the particular argument there was focused on specific points of failure that Strickland applied, but had it been a failure throughout the proceeding, Cronic would have applied. And as we mentioned, in Miller v. Martin, a post-ADPA case, this court recognized that Bell clearly established the rule we're arguing for. This court recognized Bell's narrowing effect on Cronic in that case, but presumed prejudice regardless because the advocacy was so non-existent as to fall within even a very narrow exception. The Supreme Court in Marshall v. Rogers has said that this court can look to earlier decisions to see if it has already held that a particular point is clearly established. In closing, this court should conclude for itself under Section 2243A that Cronic, Bell, and Miller require that prejudice be presumed from Mr. Raff's non-performance. If this is not a chronic case, it is unclear what would be. I'd like to reserve my remaining time for rebuttal. Mr. Drum. May it please the Court. The State Court's decision was not contrary to clearly established federal law. The Supreme Court has never presumed prejudice under the second category of chronic or under a combination of Categories 1 and 2. Cronic itself was a Category 3 case, and the court did not presume prejudice. Although Bell v. Cohen was a Category 2 case, the court did not presume prejudice there either. Lewis has not identified any Supreme Court holding that compelled the State Court to apply chronic instead of Strickland to his claim that his counsel was ineffective at sentencing. Mr. Drum, I'm sorry. On the Miller case, it's characterized as an Exception 2 case. Should Miller have been an Exception 1 or an Exception 2 case under chronic, in your opinion? In our opinion, Miller was wrong, but the court treated it as an Exception 2 case. And the reason Miller was wrong is the same reason that Lewis's argument is wrong. I'm sorry, it's wrong for the same reason that? That Lewis's argument is wrong, Your Honor, because the Supreme Court has never presumed prejudice in that situation. So there's no case that it could have been contrary to. Now, the Supreme Court has never held that the approach of chronic is being modified or is no longer a valid approach. It's hard for me to see if we agree that there are certain parts of the trial that should be characterized as a critical stage, and surely sentencing is one of them. Let me ask you this hypothetical. Suppose Mr. Raff, right before the sentencing hearing began, did something even more extreme than what happened in Woods v. Donald. Suppose Mr. Raff had just said to Mr. Lewis, well, you're on your own, and he went home and sat back and had a nice evening. Would that total absence, in your view, for sentencing be a chronic problem? That total absence sounds as if Lewis was denied counsel. So that would be a Category 1 case. All right. So the question is, what's the difference? This is not a situation such as the one this court considered in Bank and Schmidt, where the lawyer was present, the judge had instructed, and the prosecutor had talked about what the scope of the lawyer's participation was likely to be. But as far as one could tell from the record, there was nothing that prevented the lawyer from respectfully asking for permission to do more. This lawyer not only doesn't prepare his client for the sentencing, but basically says, this is Mr. Lewis, and zips his mouth up. Why is that effective assistance? Why isn't that the same thing as my going home and sitting back and watching TV example? Counsel thought that the only mitigator that was available for Lewis was a showing of remorse. You don't know that, though. He didn't behave that way at all. He didn't sit down with Mr. Lewis and say what you just said. Look, your only chance is remorse. Here's what you need to touch on in your allocution. He doesn't do anything. I don't even think we would have a case. If he had prepared his client, said this is our strategy, you know, I am advising you that as a matter of law there aren't other things we can do. But this is what I think. All right, that's what good lawyers do. But he doesn't do that. He just says this is Mr. Lewis and further says not. We do know that counsel believed that the only chance, the only opportunity he had was for Lewis to show remorse. But the thing is, is that a secret belief or is that something that he's communicated to the client? If it's a secret, I don't see how it helps him on drawing this distinction between zero and something, which is what we're trying to draw. Counsel did tell Lewis that he would be able to make a statement. Well, but the court would tell him that, too. I don't think that's any big deal. I agree. And this case might be different if the court were reviewing in the first instance. If the Supreme Court were just reviewing the state court's decision, it might be different. But here this court is reviewing a district court's decision, and the state court adjudicated the claim in the merits, so Section 2254 applies. I understand all about 2254 discretion, believe me. But you see, actually, discomfort with even the Indiana appellate court. They certainly think the performance is deficient. They're quite clear about that. And so then the question is, did they render a decision contrary to? That's the only reason that's the question we're asking, because it's a 2254D case. Did they render a decision contrary to chronic? When they didn't find a chronic, either Exception 1 or Exception 2, we can debate that problem. And they did not. I don't see. You're hypothesizing, the district court hypothesized, that maybe some future Supreme Court might come out with some decision that narrows chronic. That hasn't happened yet. We applied the Supreme Court's law as it stands, not as we think it might be someday. The problem is there is no Supreme Court law on Category 2. The court has only addressed it one time. What's wrong with chronic itself? We're supposed to just disregard it? The facts were completely different in chronic, Your Honor. Well, the application in chronic was different. I'll grant you that. But there's a whole section in chronic where the Supreme Court is talking about the situations in which it's just structurally impossible to ask somebody to show prejudice. Lewis has only raised this as a contrary to argument rather than an unreasonable application argument. So there might be an argument for unreasonable application. But he certainly hasn't raised that. And it would be difficult to show because he would have to prove that no reasonable jurist could conclude that chronic rather than Strickland applies here or the other way around. And Lewis raised the same kind of claims that he alleged his counsel failed, or the same type of claims that the court considers all the time under Strickland. He argued that counsel should have presented mitigating evidence and that he should have made an argument. Those were actually the same claims that the petitioner raised in Belle v. Cone. And the court did not presume prejudice there. The most that can be read from Belle v. Cone is that it is necessary that counsel's failure be complete at sentencing. But the court never said that is sufficient to presume prejudice under chronic. Here, Lewis' counsel represented him effectively during trial. And then when he got to sentencing, he just didn't see the available mitigators. But a non-capital sentencing case— Which is what you are inferring from his complete inactivity. We don't—I mean, you know, years later, that's what he says. Okay, fine, but we don't have any communication with the client. This is my advice to you. Give up. That's true, but the record does show that they did not have a good relationship. At the time of sentencing, Lewis did not want anything to do with his counsel. I understand that Lewis was a very difficult man, and that is—my sympathies go out to any lawyer who has to deal with such people. But it doesn't mean, though, that he can abandon his client. And our position is there's no Supreme Court case that shows that he abandoned his client here. Other than chronic, which you think doesn't mean anything, because I suppose you say it's dicta. There are courts that have concluded it was dicta, and I made that argument in the district court. The problem with that argument is the court— that Category 2 is on the same footing as Category 1,  and we agree that in Bell v. Cohn, the court treated Category 2 as part of the holding in chronic. But all that Bell v. Cohn— So it is a holding in chronic, and chronic is the applicable Supreme Court decision that we need to decide whether the state court somehow stayed within the boundaries, very generous boundaries, or was it just— did it just misread chronic to not to apply when it should have been applied? The court did not misread chronic because chronic Category 2 says counsel effectively fails to test the prosecution's case— excuse me, that counsel entirely fails to test the prosecution's case. And how did Mr. Raff test the prosecution's sentencing case? What contribution did he have to the testing of the prosecution's sentencing case? That question assumes that a complete failure at a critical stage is sufficient, and it's our position that it's not. That combines Categories 1, when you're denied counsel at a critical stage, with Category 2. Why isn't the better way to read that that Category 1 is when you literally don't have a lawyer at the critical stage, and Category 2 is you may have, you know, the proverbial potted plant sitting in the room, but that person isn't doing what a lawyer should be doing? I mean, it's pretty easy. I mean, you're kind of collapsing them into one thing, and also, I think, doing great violence to the Supreme Court's critical stage law. The Supreme Court has said that Category 1 requires the government to act somehow. It requires the government to deny counsel. Category 1 is available for cases that the government could have prevented. Category 2 is not. Category 2 is for when counsel is there and doesn't do anything. Right. So Category 1, you're saying Category 1 is basically a Gideon violation. Yes. And that makes it quite different from Category 2, which is what I'll call the potted plant, right? Yes, it is different because counsel was there, and counsel— When we're talking about 2254, yes, because there's no Supreme Court case on point. Okay. What about, Mr. Drum, if counsel is present? I think Mr. Lewis's elocution was about six pages long or so. What if the counsel is present and the government—and the court asks a question, and Mr. Lewis wants to consult with his attorney? He's present in the courtroom with his client, correct? Yes. And if there was an objection that were to occur, say, by government counsel during the defense elocution, it would be possible that Mr. Raff could have weighed in, correct? Exactly. Yes. And, Mr. Drum, I just want to explore a little bit with you this difference between 1 and 2. One way to look at that would be as a unit of measure, that the concept— the use of the word stage means a part of the proceeding, and in Exception 2, it means an entire failing. To qualify as an Exception 2 here, would the defense counsel have to literally not have done anything for the defendant during the entirety of the trial? Yes. Yes, that's correct. That's all the questions I have. Okay, thank you. Thank you. Ms. Milbank. Thank you. To address counsel's arguments, the state conceded in the post-conviction hearings that Mr. Raff did nothing. And the Indiana Court of Appeals found it as a matter of fact, and the state has not attempted to show that that state finding is wrong by clearing convincing evidence. Second, the bill states that for the purposes of distinguishing between the rule of Strickland and that of Cronic, the difference is not of degree but of kind. And then to its rule that a lawyer's failure in a sentencing hearing must be complete for Cronic's presumption of prejudice to apply, the Supreme Court has added that a lawyer's performance must be on par with total absence. The complete denial of counsel can be on par with total absence, and when that is the case, Cronic applies. Do we know, Ms. Milbank, why the Strickland claim was abandoned here? The Strickland claim was actually litigated early on and then decided clearly, and we did not believe we could argue contrary to with regard to the Strickland claim. All right, thank you. And finally, I would like to point out that there is a right to an attorney and to representation at every critical stage of a trial, including sentencing. If there is a breakdown in communication or cooperation, the attorney has a responsibility to withdraw. Having a difficult client or a difficult relationship does not excuse an attorney from their professional responsibilities to provide meaningful advocacy. And so in conclusion, I would argue that Cronic and Bell are for the thankfully rare cases in which a lawyer does nothing. Strickland is for the cases in which a lawyer does some things, but not others, as Bell puts it. Because Mr. Raff did nothing, this is a chronic case, both on stage and Mr. Lewis's sentencing hearing and behind the scenes in preparation for it. It is frankly difficult to imagine how Mr. Raff could have done less as Mr. Lewis's lawyer without being totally absent. In effect, he was absent. He was, as you put it, a potted plant. So as we say at the end of our reply brief, if this is not a chronic case, no cases. Thank you. Thank you very much. Our thanks to both counsel and the cases taken under advisement.